822 P.2d 1005

STATE of Idaho, Plaintiff–Respondent,

v.

James McLendon GOERIG,
Defendant–Appellant.

No. 18517.

Court of Appeals of Idaho.

Dec. 3, 1991.

Petition for Review Denied Jan. 31, 1992.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Asst. Atty. Gen., argued, Boise, for plaintiff-respondent.

SILAK, Judge.

James Goerig was arrested in Kootenai County by a Rathdrum city police officer for driving under the influence of alcohol, I.C. § 18–8004, and he was also charged with resisting a police officer, I.C. § 18–705. Because Goerig had pled guilty to two prior offenses of driving under the influence of alcohol between 1985 and 1989, the prosecutor charged Goerig with a felony violation of I.C. § 18–8004 pursuant to I.C. § 18–8005(3). Under I.C. § 18–8005(3), a third conviction within five years for driving under the influence of alcohol is a felony and carries an enhanced penalty.

On appeal, Goerig contends: (1) that the arresting officer did not have the authority to make an arrest outside of the corporate boundaries of Rathdrum; (2) that the court's evidentiary rulings were incorrect; (3) that he should not have been charged with driving under the influence of drugs; (4) that the jury instructions incorrectly referred to and defined the word "drug"; (5) that there was not substantial evidence to support the jury's finding that Goerig resisted and obstructed a police officer; and (6) that his prior convictions for drunk driving were not valid for the purpose of enhancing his sentence. For the reasons stated below, we reject Goerig's arguments and affirm Goerig's convictions for felony DUI and resisting a police officer.

## I. FACTS AND PROCEDURAL BACKGROUND

On the evening of April 2, 1989, Goerig was returning to his home in Hayden Lake from Spokane, Washington, where he had gone to visit a relative. Goerig testified that he suffers from manic depression. He began to sense that his mood was elevating and that he was entering a manic state. Goerig has prescription medicine which helps him control his illness, but he did not have the medication with him at the time. As he was on his way home to get his medicine, he stopped at a bar in Rathdrum in order to "self-medicate" with four glasses of beer.

When Goerig left the bar, he started to drive home. On his way home, Goerig was stopped by Rathdrum City Police Officer Carrington who had observed Goerig driving erratically and going through a stop sign. Goerig testified that he was in a "panic state" when Officer Carrington pulled him over and that he could not remember everything that happened. Officer Carrington asked Goerig to perform several field sobriety tests. Goerig failed those tests. Goerig told Officer Carrington that he was a manic depressive. Officer Carrington put handcuffs on Goerig while Goerig had his eyes closed and was trying to perform one of the tests. Goerig became combative and made statements about committing suicide. While the officer was driving Goerig to the police station, Goerig asked Officer Carrington to shoot him.

Officer Carrington took Goerig to the Kootenai County Public Safety Building and requested that Goerig submit to an evidentiary test to determine the alcohol content of his blood. At that point, Goerig asked that his handcuffs be removed. The officers in charge refused Goerig's request because of his previous erratic behavior

and suicide threats. Goerig ultimately refused to take the breathalyzer test.[1]

A jury found Goerig guilty of driving under the influence of intoxicants and of resisting a police officer. After his conviction, Goerig entered a conditional plea to the enhancement portion of the case which resulted in a felony DUI conviction. On the felony DUI charge, the district court imposed a sentence of five years in the custody of the Board of Correction with a minimum period of confinement of two years. Subsequently, the district court entered an order suspending the sentence and placed Goerig on probation for five years. The court separately sentenced Goerig on the resisting charge.

## II. EXTRATERRITORIAL AUTHORITY OF THE POLICE OFFICER

■ We turn first to the question whether Officer Carrington had the authority to arrest Goerig outside the Rathdrum city limits. Under Article 18, § 6 of the Idaho state constitution, the legislature is directed to provide county and municipal officers for the local governments of the state of Idaho. The county officers are enumerated in I.C. § 31–2001 and the list includes the office of sheriff. Article 18, § 6 also authorizes the sheriff to appoint deputies "as the business of [his] office may require." *See also* I.C. § 31–2003; I.C. § 31–3107. In this case, the state presented undisputed evidence that the Kootenai County sheriff appointed Officer Carrington as a special deputy sheriff. Idaho Code § 67–2337 provides that peace officers[2] may perform their functions and duties outside of the limits of their respective city or political subdivision at the request of the chief law enforcement officer of another city or political subdivision. *See also In re Griffiths*, 113 Idaho 364, 369, 744 P.2d 92,

97 (1987). Because Officer Carrington's assistance was requested by the Kootenai County sheriff, he had authority to stop and arrest Goerig outside of the Rathdrum city limits. Consequently, the arrest was valid.

## III. EVIDENTIARY RULINGS

■ Goerig challenges three evidentiary rulings on appeal. Goerig asserts that the district court erred by allowing Officer Carrington to testify regarding the accuracy of his assessments of a driver's sobriety, by refusing to admit the favorable disposition of Goerig's driver's license suspension hearing, and by excluding Goerig's videotape of the portion of the highway where he was apprehended. As a preliminary matter, we note our standard of review on appeal. Error in the admission or exclusion of evidence is not reversible unless a substantial right of the party challenging the trial court's evidentiary ruling is affected. I.R.E. 103; *State v. Babbitt*, 120 Idaho 337, 342, 815 P.2d 1077, 1082 (Ct.App.1991). What is an error affecting a substantial right is not defined by the Rules of Evidence, but must be determined on a case-by-case basis. *Id.* For the following reasons, we conclude that Goerig has not satisfactorily demonstrated any effect upon a substantial right with respect to the trial court's evidentiary rulings.

■ Goerig contends that the district court erred by allowing Officer Carrington to testify that his assessments of a person's sobriety based upon field tests were 95 percent accurate after the officer conducted tests (presumably breathalyzer, blood, or urine tests) to confirm or disprove the opinion that he formed about intoxication. Goerig's objections are that there was inadequate foundation that the officer knew that the testing machines the officer

---

1. Before the trial, in a separate civil proceeding, Goerig requested a show cause hearing before a magistrate pursuant to I.C. § 18–8002(3)(b). At that hearing, the court ruled that Goerig's request to have his handcuffs removed before taking the breathalyzer test was reasonable; thus, because Goerig's request was reasonable, his conditional consent to take the test was valid. For that reason, the court concluded that

Goerig had not refused the breathalyzer test and returned his driver's license to him. The State appealed the decision and this Court reversed in *Matter of Goerig*, 121 Idaho 26, 822 P.2d 545 (Ct.App.1991).

2. The term "peace officer" is defined in I.C. § 19–510 as "a sheriff of a county, or a constable, marshal, or policeman of a city or town."

used were "calibrated," that the officer had properly administered the tests using the various devices, and that the officer's opinion as to a person being "under the influence" would equate to a certain blood alcohol content.

The officer was competent to testify as to his own personal knowledge of the results of the tests as compared to the field sobriety tests. His testimony was admissible under I.R.E. 701, "Opinion testimony by lay witness," because the opinion was rationally based on the perception of the witness, and was helpful to the determination of a fact in issue, namely, whether Goerig was intoxicated when stopped. The objections raised by Goerig were the proper subject of cross-examination, but do not persuade us that the trial court erred in admitting the testimony.

■ Goerig's counsel attempted to cross-examine Officer Carrington's claim of a 95 percent accuracy rate in his assessment of intoxication by asking him whether any of the persons he had arrested for drunk driving were ever found not guilty by a jury, and whether any of his arrests for drunk driving have ever been reduced to lesser offenses by prosecutors. The court ruled that these questions were irrelevant. We agree with the trial court's determination in this regard, because many factors other than the accuracy of the arresting officer's perception of a level of intoxication may affect the subsequent prosecution.

■ On November 6, 1989, a magistrate entered an order dismissing the driver's license suspension proceedings against Goerig and ordered the return of his driver's license. Goerig sought the admission of this order at his trial. The trial court refused to admit the order because it was not relevant. We agree. The magistrate's ruling was based on the reasonableness of Goerig's request to have his handcuffs removed; it was not a determination either as to probable cause for the stop and arrest or any element of the charged offense. Thus, the trial court correctly concluded that it was not relevant to the prosecution of Goerig for driving under the influence of alcohol.

■ Finally, Goerig contends that the trial court erred in refusing to admit a videotape of the portion of the highway where Officer Carrington initially observed Goerig driving erratically and going through a stop sign. Officer Carrington testified that he observed Goerig from a bridge over the railroad tracks at the intersection of Highway 53 and Highway 95. The videotape was offered for impeachment purposes to show that Officer Carrington could not have seen Goerig from that point. The trial court refused to admit the tape because the tape did not show everything that would be visible to a driver on that road. The trial court essentially concluded that, because of the limitations of the video camera and the lack of information regarding temporal and climatic conditions under which the tape was made, the tape lacked adequate foundation; further, that even if the tape were admissible, its probative value was outweighed by the danger of unfair prejudice. I.R.E. 402, 403. Having reviewed the record, we find no indication that the trial court erred in excluding the videotape as evidence.

## IV. MOTION TO DISMISS OR STRIKE/JURY INSTRUCTION 16D

■ Goerig asserts that jury instruction 16D was improper and that the trial court erred by refusing to dismiss or strike the portion of the information charging Goerig with driving under the influence of drugs. Instruction No. 16D stated:

The term "drug" as used in these instructions, means any substance or combination of substances other than alcohol, which could so affect the nervous system, brain, or muscles of a person as to impair to such an extent as could influence or affect defendant's driving of the motor vehicle.

Idaho Code § 18–8004(5) states:

It is unlawful for any person who is an habitual user of, or under the influence of any narcotic drug, or who is under the influence of any other drug *or any combination of alcohol and any drug* to a

degree which renders him incapable of safely driving a motor vehicle,.... *The fact that any person charged with a violation of the provisions of this subsection is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of a violation of the provisions of this section.*

(Emphasis added). Goerig testified that, prior to the time of his arrest, he had taken lithium, a prescription medication, and that he had been drinking alcohol. Goerig argues that the jury was not provided adequate information about lithium, and was not given adequate guidance about whether lithium is a "drug" under the meaning of I.C. § 18–8004. During the trial, Goerig presented no evidence regarding the chemical properties or the physical effects of lithium; he testified only that lithium is a prescription medication.

Based on the limited facts of this case, and absent any proof to the contrary, we must conclude that lithium is a drug for the purposes of I.C. § 18–8004. Thus, the court did not err by refusing to dismiss or strike the portion of the complaint charging Goerig with driving under the influence of drugs, nor did the court err in giving jury instruction number 16D. As the prosecution argued, even if lithium alone did not impair Goerig's ability to operate a car, lithium combined with four glasses of beer may have. Moreover, under I.C. § 18–8004(5), the fact that Goerig was legally entitled to take lithium because it had been prescribed to him is not a defense to a charge of driving under the influence of intoxicants.

## V. RESISTING AN OFFICER

Goerig asserts that there is not sufficient evidence to support his conviction for resisting an officer. On appellate review, a judgment of conviction entered upon a jury verdict will not be set aside where there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Fil-*

*son,* 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). The essential elements of the crime of resisting a public officer are that a person resists, delays, or obstructs that public officer, while the officer is discharging or attempting to discharge his official duties. There is no question that Officer Carrington was discharging his official duties at the time he arrested Goerig. Goerig testified that he was in a manic state at the time he was arrested and that his arms "went out" when Officer Carrington handcuffed him. Officer Carrington testified that he had to wrestle with Goerig in order to restrain him. Based on this testimony, we conclude that there was sufficient evidence to support the jury's verdict.

## VI. ADMISSION OF PRIOR DUI CONVICTIONS

Goerig filed a motion to suppress evidence of his prior drunk driving convictions for the purpose of enhancing the third DUI charge from a misdemeanor to a felony. He contends that the prior DUI convictions are constitutionally infirm and therefore inadequate to support a charge of felony DUI under I.C. § 18–8005(3).

Goerig argues that, although he was represented by counsel in both prior proceedings, the magistrate involved in the prior proceedings did not comply with the requirements set forth in *State v. Carrasco,* 117 Idaho 295, 787 P.2d 281 (1990). In *Carrasco,* our Supreme Court discussed the constitutional requirements which must be met before a court may accept a plea of guilty in a felony case. The Court specifically noted that these requirements apply only to felony cases and that the provisions of I.C. § 19–1502 and Rule 6 of the Misdemeanor Criminal Rules continue to be applicable in accepting guilty pleas in misdemeanor cases. *Carrasco,* 117 Idaho at 297–98 n. 1, 787 P.2d at 283–84 n. 1. Both of Goerig's first and second DUI violations were misdemeanors under the statute which prescribes the penalties for driving

under the influence. I.C. §§ 18–8005(1) and 18–8005(2).[3] Thus, *Carrasco* is not applicable in this case.

Goerig also challenged the use of his first two DUI convictions on the basis that the prior judgments did not comport with the requirements of *State v. Mesenbrink*, 115 Idaho 850, 771 P.2d 514 (1989). The district court properly rejected this argument because the two judgments show on their face that Goerig was represented by counsel at the taking of his guilty pleas. As the Supreme Court stated in *Mesenbrink*, 115 Idaho at 851, 771 P.2d at 515:

> I.M.C.R. 5(f) (1980), mandates the use of a uniform citation form which contains a checklist of questions to be asked the defendant prior to a court entering judgment. The court is therein required to advise a defendant of constitutional and statutory rights, and *the court must indicate such procedures have been followed if the defendant chooses to enter an uncounseled guilty plea.*

(Emphasis added.) Although on their face the two previous judgments are not in the form required by I.M.C.R. 5(f), under *Mesenbrink*, strict compliance is required *only* when the defendant enters an uncounseled guilty plea. Here, because Goerig was represented by counsel, it cannot be said that *Mesenbrink* required the district court to find that the state had failed to meet its burden to show a voluntary waiver of sixth amendment rights.

Goerig's constitutional arguments under *Carrasco* and *Mesenbrink* are without merit, and we affirm the trial court's ruling that the two prior DUI convictions could be used for enhancement purposes.

## VI. CONCLUSION

In summary, we decline Goerig's invitation to reverse his convictions and set aside his sentences. We affirm Goerig's convic-

tions for felony DUI and resisting an officer.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**3.** The record indicates that Goerig signed a written document titled "Notification of the Penalties for Subsequent Violation" on both occasions; this document states the enhanced penalties for a third DUI violation within a period of five years.